**JOHNSON MORTGAGE SERVICES, INC.**

v.

**REGIONAL PROPERTIES, INC.**

No. CA 3–77–1205–C.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 7, 1979.

Gary E. Smith and William E. Douglass, Shank, Irwin, Conant, Williamson & Grevelle, Dallas, Tex., for plaintiff.

William C. Meier, Euless, Tex., Charles L. Schreeder, III and Lawrence S. Burnat, Schreeder, Wheeler & Flint, Atlanta, Ga., for defendant.

### MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

The plaintiff, Johnson Mortgage Services, Inc., brings this action for damages allegedly resulting from a breach of a brokerage fee contract. Johnson Mortgage Services, Inc. (hereinafter, "JMS"), is an Ohio corporation having its principal office in Cincinnati, Ohio. Defendant Regional Properties, Inc. (hereinafter, "RPI"), is a Texas corporation having its principal office in Dallas, Texas. Jurisdiction of this Court is based on diversity of citizenship between the parties hereto under 28 U.S.C.A. § 1332(a)(1). The amount in controversy exceeds the sum of $10,000, exclusive of interests and costs. Venue of this cause lies in the Northern District of Texas under 28 U.S.C.A. § 1391(a).

On March 3, 1976 and March 22, 1976, respectively, Fort Worth Mortgage Corporation (hereinafter, "FWM") solicited the services of JMS to secure or cause to be secured "standby permanent loan commitments" to finance a 296-unit apartment complex at the corner of Elderville Road and Brentwood Stair Road in Fort Worth, Texas; and a 232-unit apartment complex in Euless, Texas, known as Oakwood Estates. In making such solicitations, FWM was acting as the duly authorized agent of RPI. These solicitations were ratified by RPI.

JMS is in the business of securing such financing and usually charges a fee for its services of 1% of the committed amount. This fact was communicated by JMS to FWM (who subsequently related it to RPI) on or about April 8, 1976. This fee arrangement and agreement was acknowledged and accepted by RPI on or about April 20, 1976. J. Lyndon Johnson, President of JMS, again communicated the amount of this fee to Paul E. Thomes, President of RPI, on or about July 21, 1976. Ultimately, JMS agreed that this fee would be divided equally between JMS and FWM.

On August 16, 1976, FWM, by three-party letter agreement among JMS, FWM and RPI, proposed to RPI standby permanent loan commitments from Women's Federal Savings and Loan Association for these two projects in the aggregate amount of six million four hundred thousand dollars ($6,400,000). This letter agreement contained the following provision:

> "Upon acceptance of a satisfactory commitment, you have agreed to pay the following fees:
>
> In the event both projects are approved and the commitments are accepted by you, a fee of 1% is to be paid *upon acceptance* with said fee being divided equally between Fort Worth Mortgage Corporation and Johnson Mortgage Services, Inc."

This proposal was approved and accepted by RPI on August 20, 1976.

On or about September 14, 1976, Women's Federal Savings and Loan Association issued standby permanent loan commitments for the above-mentioned apartment complexes in the aggregate amount of six million four hundred thousand dollars ($6,400,000), which were agreed to and accepted by RPI, as modified and extended, on or about December 31, 1976.

The Court finds that all of the foregoing constitute a valid and binding written contract among JMS, FWM and RPI wherein RPI agreed to pay JMS and FWM a fee of ½% each of the total amount of the above-mentioned standby permanent loan commitments ($32,000 each) upon acceptance of the commitments by RPI. The Court further finds that although JMS has secured or caused to be secured commitments which were accepted by RPI, thereby fully performing pursuant to the terms of this contract, RPI continues to fail and refuse to pay JMS' share of this fee to JMS, thereby breaching this contract. The Court finds that all conditions precedent to RPI's duty to make payment of this fee to JMS have occurred.

Defendant RPI argues that payment of this fee became or will become due upon funding of the loan commitments, and that funding of the loan commitments is a condition precedent to payment of JMS' fee. However, this Court does not agree.

First of all, from the testimony at trial it is clear that "standby permanent loan commitments" of the sort obtained by defendants have value largely as a predicate for obtaining a construction loan. Oftentimes these standby loans are not expected to be funded since their interest costs are higher than other types of loans. However, they are nonetheless important for the completion of construction, and therefore valuable to building enterprises. Secondly, the Court finds that plaintiff's exhibit 9, the letter agreement approved by the defendant on August 20, 1976, is persuasive as to the intent of the parties. That agreement states: "In the event both projects are approved and the commitments are accepted by you, a fee of 1% is to be paid *upon acceptance* . . . ." The Court is not persuaded that the agreement dated Sep-

tember 28, 1976, and signed and agreed to by Jerry D. Shipley, Vice-President of RPI, on October 28, 1976, "represented a merging of the previously stated contentions . . . concerning any fee due to JMS . . ." Neither does the Court find that this document is "an unambiguous written instrument which is complete on its face," given the circumstances of its execution. The Court found J. Lyndon Johnson's testimony at trial concerning the execution of this document credible, and in light of that testimony cannot accept defendant's argument that a funding of the standby commitments was a condition precedent for the payment of any brokerage fee to JMS. In addition, defendant's argument is not the most reasonable interpretation of the events and documents introduced into evidence. Most significantly, as has been stated, the letter agreement approved by defendants on August 20, 1976, cannot be labeled as merely "negotiations," rather it evidences a reasonable and binding agreement on its face, and under the circumstances of this case.

Because of the above reasoning, this Court holds that under the preponderance of the evidence presented at trial of this cause, JMS had an enforceable contract for the payment of his brokerage fee of $32,000; and that this fee was to be paid "upon acceptance" of the standby commitments. Judgment is rendered in favor of plaintiff for the $32,000 actual damages resulting from defendant's breach of the brokerage fee contract. Defendant is also entitled to recover costs and attorney's fees in the amount of $8,000.

Plaintiff's attorney is requested to submit an appropriate judgment pursuant to this opinion.